DOYLE LOWTHER LLP
William J. Doyle II (SBN 188069)
John Lowther (SBN 207000)
James R. Hail (SBN 202439)
Christopher W. Cantrell (SBN 290874)
10200 Willow Creek Road, Suite 150
San Diego, CA 92131
(858) 935-9960 phone
(858) 939-1939 fax

WESTERMAN LAW CORP.
Jeff S. Westerman (SBN 94559)
Anna Faircloth (SBN 275636)
1900 Avenue of the Stars, 11th Floor
Los Angeles, CA 90067
(310) 698-7880 phone
(310) 698-7452 fax

*Attorneys for Plaintiff Kiloe Young*

# UNITED STATE DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| KILOE YOUNG, Individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | Class Action Complaint |
| v. | |
| NVIDIA CORPORATION and ASUS COMPUTER INTERNATIONAL, | |
| Defendants. | Jury Trial Demanded |

CLASS ACTION COMPLAINT

Plaintiff Kiloe Young, both individually and on behalf of all others similarly situated, by his undersigned counsel, alleges the following upon personal knowledge as to his own acts and upon information and belief as to all other matters, which allegations are likely to have evidentiary support after the opportunity for further investigation and discovery.

**NATURE OF THE ACTION**

1. Plaintiff brings this action against defendants NVIDIA Corporation and ASUS Computer International ("Defendants") on behalf of all persons and entities who purchased one or more NVIDIA GTX 970 graphics card ("GTX 970") since September 18, 2014 (the "Class Period").

2. As advertised and marketed, the GTX 970 purports to feature 4GB of GDDR5 memory, but the final 512MB runs at a materially slower rate than the first 3.5GB. The GTX 970 does not function as if it has a full 4GB of GDDR5 memory, which was and is a material selling point for the device.

3. As advertised and marketed, the GTX 970 purports to have Raster Operating Pipelines of 64 ROPs, but instead has 56 ROPs. The GTX 970's L2 cache is also not the 2048KB advertised and marketed, but instead is 1792KB.

4. NVIDIA recently admitted these published specifications for the GTX 970 were either false (the ROPs and L2 cache) or incomplete (the 4GB GDDR5 memory).

5. Plaintiff and Class Members suffered injury in fact and a loss of money or property as a result of Defendants' conduct in marketing and selling the GTX 970.

**THE PARTIES**

6. Plaintiff Kiloe Young is an individual and citizen of the State of California. During the Class Period, Mr. Young purchased a new ASUS NVIDIA GTX 970 graphics card. Mr. Young was unaware of the GTX 970's true performance specifications before purchasing the card. Had defendants disclosed the correct specifications of the GTX 970 card, Mr. Young would not have purchased his GTX 970 card.

7. Defendant NVIDIA Corporation is a Delaware corporation and engages in business throughout California. NVIDIA's principal place of business is in Santa Clara, California. NVIDIA designed, tested, manufactured, marketed, advertised, distributed, and sold the GTX 970 cards nationwide.

8. Defendant ASUS Computer International is a California corporation and engages in business throughout California. ASUS's principal place of business is in Fremont, California. ASUS tested, marketed, advertised, distributed, and sold the GTX 970 cards nationwide.

## JURISDICTION AND VENUE

9. The Court has jurisdiction over this action under 28 U.S.C. § 1332(d), the Class Action Fairness Act, because this suit is a class action, the parties are minimally diverse, and the amount in controversy exceeds $5 million, excluding interest and costs. This Court also has federal question jurisdiction as this Complaint alleges violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310, *et seq.*, and the amount in controversy exceeds $50,000.

10. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims because Plaintiff's claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

11. Defendants maintain their principal place of business in California. Jurisdiction is proper because Defendants purposely avail themselves of the privilege of conducting business activities in California and because they maintain systematic and continuous business contacts with this State, and have many thousands of customers who are California citizens and who do business with Defendants in this State.

12. Venue is proper under 28 U.S.C. § 1391(a) because (1) Defendants are subject to personal jurisdiction in this District, and (2) a substantial part of the events or omissions giving rise to these claims occurred in this District. Defendants engaged in the extensive promotion, marketing, distribution, and sales of the products at issue in this District, and at least one Defendant has their corporate headquarters in this District.

# FACTUAL ALLEGATIONS

13. Since September 2014, Defendants have marketed, advertised, distributed, and warranted the GTX 970 nationwide.

14. Defendants have uniformly marketed, advertised, sold, and disseminated information that represents the GTX 970 as having specific capabilities when it does not. Defendants, through their sales force, websites, and retailers, made material representations about the GTX 970. For instance, NVIDIA lists the GTX 970's specifications on its website, stating the "Standard Memory Config" is "4GB" of "GDDR5" memory. In the NVIDIA GTX 970 Reviewer's Guide, sent to all media intended to review, repeat the specifications of, describe and promote the GTX 970, and pass along to consumers, NVIDIA stated the GTX 970 had 2MB L2 Cache, and 64 ROPs.

15. Contrary to these representations, the GTX 970 does not provide these advertised specifications.

16. Defendants failed to disclose the GTX 970's true specifications, despite having evidence to the contrary in their exclusive possession and control prior to its release for sale. Defendants' material misstatements and omissions about the GTX 970 would be likely to, and did, mislead reasonable consumers who are targeted by Defendants to purchase these products.

17. Because Defendants' claims were included in advertisements, marketing, and sales presentations, a reasonable consumer who would purchase these products would likely be misled into believing the GTX 970 functioned using a full 4GB of GDDR5, 64 ROPs, and 2048KB of L2 cache, when that is not the case. Defendants' misrepresentations and omissions are the type that would be material to typical purchasers targeted by Defendants, *i.e.*, a reasonable person interested in these types of devices would attach importance to them and would be induced to act on the information in making purchase decisions.

18. In response to Defendants' marketing, Plaintiff and Class members were exposed to Defendants' misleading representations and purchased the GTX 970. As they purchased these devices in substantial part on the false belief the device would conform to specifications advertised, such claims were a substantial factor in the decision of Plaintiff and others to do so.

19. On January 25, 2015, NVIDIA's Senior Vice President of Hardware Engineering, Jonah Alben, admitted that while the GTX 970 technically features 4GB of RAM, the final 512MB part runs at a far slower rate than the first 3.5GB. Thus, when a consumer uses the full 4GB of memory, once 3.5GB is reached, their program's performance will materially degrade. Simply, the device does not function as if it has a full 4GB of GDDR5 RAM, which was and is a material selling point for the device.

20. NVIDIA Senior Vice President Alben also admitted the GTX 970's ROPs (Raster Operating Pipelines) are not the 64 ROPs as advertised, but instead are 56 ROPs. And further, the L2 cache was not the 2048 KB advertised, but 1792 KB instead.

21. These undisclosed limitations are not unintended technical glitches, but a purposeful design decision NVIDIA made before releasing the GTX 970. As Mr. Alben later confirmed, the GTX 970 is "working exactly as we designed it," although according to him, NVIDIA "screwed up" communicating the card's specifications.

22. On February 24, 2015, NVIDIA CEO Jen-Hsun Huang issued the following statement on NVIDIA's corporate blog:

> Hey everyone,
>
> Some of you are disappointed that we didn't clearly describe the segmented memory of GeForce GTX 970 when we launched it. I can see why, so let me address it.
>
> We invented a new memory architecture in Maxwell. This new capability was created so that reduced-configurations of Maxwell can have a larger frame buffer – i.e., so that GTX 970 is not limited to 3GB, and can have an additional 1GB.
>
> GTX 970 is a 4GB card. However, the upper 512MB of the additional 1GB is segmented and has reduced bandwidth. This is a good design because we were able to add an additional 1GB for GTX 970 and our software engineers can keep less frequently used data in the 512MB segment.
>
> Unfortunately, we failed to communicate this internally to our marketing team, and externally to reviewers at launch.
>
> Since then, Jonah Alben, our senior vice president of hardware engineering, provided a technical description of the design, which was captured well by several editors. Here's one example from The Tech Report.

> Instead of being excited that we invented a way to increase memory of the GTX 970 from 3GB to 4GB, some were disappointed that we didn't better describe the segmented nature of the architecture for that last 1GB of memory.
>
> This is understandable. But, let me be clear: Our only intention was to create the best GPU for you. We wanted GTX 970 to have 4GB of memory, as games are using more memory than ever.
>
> The 4GB of memory on GTX 970 is used and useful to achieve the performance you are enjoying. And as ever, our engineers will continue to enhance game performance that you can regularly download using GeForce Experience.
>
> This new feature of Maxwell should have been clearly detailed from the beginning.
>
> We won't let this happen again. We'll do a better job next time.

23. Despite these admissions, Defendants continue to advertise and market the GTX 970 with inaccurate specifications on their websites and through third party retailers.

24. Plaintiff and the Class were sold high-performance graphic cards for "serious gaming" that do not possess the specifications advertised and represented. As such, they should be provided appropriate relief, as all consumers who purchased a GTX 970 device have been injured by Defendants' wrongful conduct, as they did not receive the product they paid for in terms of possessing the characteristics set forth above.

## CLASS ACTION ALLEGATIONS

25. Plaintiff brings this class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and/or (b)(3), on behalf of himself and on behalf of the following class (the "Class"):

> All persons and entities who purchased one or more NVIDIA GTX 970 graphics card from NVIDIA or a third-party retailer since September 18, 2014.
>
> Excluded from the Class are: (1) Defendants, their officers and directors at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, any entity in which Defendants have or had a controlling interest; (2) Counsel for Plaintiff; and (3) the Judge and other officers of the Court presiding over this matter.

26. Plaintiff reserves the right to amend or modify the Class definition in connection with a motion for class certification or with the results of discovery. This class action is properly brought as a class action for the reasons set forth herein.

27. The Class is so numerous that joinder of individual members of the proposed Class is impracticable. The Class includes thousands of persons geographically dispersed throughout the United States. The precise number and identities of Class Members are unknown to Plaintiff, but are known to Defendants and can be ascertained through discovery, namely by using Defendants' and third parties' sales records, warranty records, and other information.

28. Plaintiff does not anticipate any difficulties in this litigation's management as a class action, and the action will accrue substantial benefit to members of the Class. The Class is ascertainable, and there is a well-defined community of interest in the questions of law and/or fact, since the rights of each Class member were infringed or violated in similar fashion based upon Defendants' misconduct. Notice can be provided through records maintained by Defendants and third parties and through a combination of mailed and electronic notice and publication, the cost of which is properly imposed upon Defendants.

29. Questions of law or fact common to the Class exist as to Plaintiff and Class Members, and these common questions predominate over any questions affecting only individual members of the Class. Answering these questions will determine at one time Defendants' liability for the conduct alleged herein. Among the common questions of law and/or fact are the following:

    (a) whether Defendants made any misrepresentations or omitted material facts in the advertising, marketing, and sale of the GTX 970;

    (b) whether Defendants breached any implied warranties relating to GTX 970;

    (c) whether Defendants violated applicable consumer protection laws by advertising, marketing, and selling the GTX 970 with incorrect specifications;

    (d) the appropriate nature of class-wide equitable relief; and

    (e) the appropriate measure of monetary relief to award to Plaintiff and the Class.

30. Defendants engaged in a common course of conduct giving rise to legal rights sought to be enforced by Plaintiff and the Class. Individual questions, if any, pale in comparison to the numerous common questions, which predominate.

31. The injuries sustained by Plaintiff and Class Members flow, in each instance, from a common nucleus of operative facts based on Defendants' conduct. Moreover, the defenses, if any, which will be asserted against Plaintiff's claims will likely be typical of the defenses that will be asserted against the Class Members' claims.

32. Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff has no interests materially adverse to or that irreconcilably conflict with the interests of the Class Members and has retained counsel with significant experience in the prosecution of class actions and complex litigation, including consumer litigation, and who will vigorously prosecute this case.

33. A class action is superior to other available methods for the fair and efficient group-wide adjudication of this controversy, and individual joinder of all members of the Class is impracticable, if not impossible, because of the number of Class Members geographically dispersed throughout the United States. Moreover, the cost to the court system of such individualized litigation would be substantial. Individualized litigation would likewise present the potential for inconsistent or contradictory judgments and would result in significant delay and expense to all parties, with multiple courts adjudicating virtually identical lawsuits. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and Court, protects the rights of each Class Member and maximizes recovery to them, thus accruing substantial benefits to the parties, absent Class Members and the Court.

34. Defendants have acted on grounds generally applicable to the entire Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole.

# COUNT I

### Violation of California's Unfair Competition Law
### Business & Professions Code §§ 17200 *et seq.*

35. Plaintiff incorporates all the above allegations by reference as if fully set forth herein.

36. Defendants' business acts and practices complained of were centered in, carried out, effectuated and perfected within or had their effect in the State of California, and injured all Class Members.

37. Since September 2014, and continuing thereafter Defendants committed acts of unfair competition, as defined by Sections 17200 *et seq.* of the California Business and Professions Code by engaging in the acts and practices specified above.

38. This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code to obtain equitable monetary and injunctive relief from Defendants for acts and practices, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

39. Defendants' conduct, as alleged herein, violated Section 17200. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants constituted a common continuous course of conduct of unfair competition by means of the commission of unfair, fraudulent or unlawful business acts or practices within the meaning of California Business and Professions Code, §§ 17200 *et seq.*

40. Defendants engaged in "unlawful" business acts and practices by:

    (a) breaching applicable warranties;

    (b) violating the Consumers Legal Remedies Act, California Civil Code §§ 1750 *et seq.*;

    (c) violating the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*;

CLASS ACTION COMPLAINT

   (d) violating the Song-Beverly Consumer Warranty Act, California Civil Code §§ 1792 *et seq.*; and

   (e) violating the False Advertising Law, California Business and Professions Code, §§ 17500 *et seq.*

41. Defendants engaged in "unfair" business acts and practices by, among other things:

   (a) engaging in conduct where the utility of such conduct, if any, is outweighed by the gravity of the consequences to Plaintiff and the Class considering the reasonably available alternatives, based on legislatively declared policies;

   (b) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the Class;

   (c) engaging in conduct which causes substantial injury to consumers, which injury is not outweighed by any countervailing benefits to consumers or competition, and which consumers could not reasonably have avoided; and

   (d) engaging in conduct tethered to violations of legislative provisions of the CLRA, Song-Beverly Act, Magnuson-Moss Warranty Act, False Advertising Law, and the California Commercial Code.

42. Specifically, Defendants engaged in "unfair" business acts and practices by advertising, marketing, and selling the GTX 970 with false and misleading specifications. Defendants also engaged in unfair business acts and practices by entering into and breaching implied warranties.

43. Had Plaintiff known of the correct specifications of the GTX 970 he would not have purchased the card.

44. As such conduct is or may well be continuing and on-going, Plaintiff and each Class Member is entitled to injunctive relief to prohibit or correct such on-going acts of unfair competition, in addition to obtaining equitable monetary relief.

45. Plaintiff and Class Members used Defendants' products and had business dealings with Defendants either directly or indirectly. The acts and practices of Defendants have caused

Plaintiff to lose money or property by paying for a product with misrepresented specifications. Such loss was the result of the above acts of unfair competition and Defendants' misconduct in violation of the laws set forth above. Plaintiff and Class Members are therefore entitled to seek recovery of such amounts. Such injury occurred at the time such monies were paid.

46. Defendants unjustly benefitted by the acts of unfair and unlawful conduct described above. Plaintiff and the Class Members are accordingly entitled to equitable relief including restitution and/or restitutionary disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts and practices.

## COUNT II

**Violation of California's False Advertising Law**
**Business & Professions Code §§ 17500 *et seq*.**

47. Plaintiff incorporates all the above allegations by reference as if fully set forth herein.

48. Defendants engaged in the advertising and marketing alleged herein with the intent to directly or indirectly induce the sale of the GTX 970 devices to consumers like Plaintiff. Such advertisements originated in California and were disseminated nationwide.

49. Defendants' advertising and marketing representations regarding the 4GB of GDDR5 memory, ROPs, and L2 cache of the GTX 970 were false, misleading, and deceptive as set forth above. Defendants also concealed material information from consumers about the impact of the correct specifications and true capabilities of the GTX 970.

50. Defendants' material misrepresentations and omissions alleged herein deceive or have the tendency or likelihood to deceive the general public targeted by these advertisements regarding the benefits of purchasing GTX 970.

51. At the time Defendants made the misrepresentations and omissions of material fact as alleged herein, Defendants reasonably should have known they were untrue or misleading, in violation of Bus. & Prof. Code §§ 17500, *et seq*.

52. As a result, Plaintiff and the Class seek disgorgement, restitution, injunctive relief, and all other relief permitted under Bus. & Prof. Code §§ 17500, *et seq*.

## COUNT III

### Breach of Implied Warranty

53. Plaintiff incorporates all the above allegations by reference as if fully set forth herein.

54. Defendants sold the GTX 970 in their regular course of business. Plaintiff and Class Members purchased the GTX 970. Such graphics cards are goods.

55. Defendants advertised and marketed the GTX 970 to consumers as "high-performance graphics card designed for serious gaming," and having the specifications described above.

56. By placing such products into the stream of commerce, by operation of law including Section 2314 of the California Commercial Code, Defendants impliedly warranted to Plaintiff and Class Members that these cards were of merchantable quality (*i.e.*, a product of a high enough quality to make it fit for sale, usable for the purpose it was made, of average worth in the marketplace, or not broken, unworkable, contaminated or flawed), would pass without objection in the trade or business, and reasonably fit for the use for which they were intended.

57. Defendants breached all applicable implied warranties because the GTX 970 were, among other things, unfit for their intended use and ordinary purpose.

58. To the extent any of the GTX 970 were not purchased directly from Defendants but rather from authorized resellers, the sellers of these goods were not intended to be the ultimate consumers of the GTX 970 and were merely a pass through entity. Plaintiff and the Class were the intended, ultimate consumers of the GTX 970. As such, the warranties accompanying the cards were designed and made expressly for the benefit of the ultimate consumers only (*i.e.*, the Plaintiff and the Class).

59. Plaintiff and others have performed all warranty pre-conditions required of them in terms of paying for the goods at issue. Because Plaintiff did not purchase his GTX 970 directly from NVIDIA, and instead purchased from a third party retailer, Plaintiff is not required to provide NVIDIA with notice of a breach of warranty. Despite not being required to do so in order to bring a claim for breach of warranty, Plaintiff provided Defendants with notice of this action.

60. Defendants' breach of implied warranties caused Plaintiff and Class Members to suffer injuries by entering into transactions they would not have entered for the consideration paid but for Defendants' acts.

61. As a direct and proximate result of Defendants' breach of implied warranty, Plaintiff and Class Members have suffered damages and continue to suffer damages, including economic damages.

62. As a result of the breach of these implied warranties, Plaintiff and Class Members are entitled to legal and equitable relief against Defendants.

**COUNT IV**

**Violation of the Song-Beverly Act, Cal. Civ. Code §§ 1791 *et seq.***

63. Plaintiff incorporates all the above allegations by reference as if fully set forth herein.

64. Plaintiff and Class Members are "buyers," Defendants' GTX 970 graphics cards are "consumer goods," and Defendants are "retailers" and "manufacturers" within the meaning of this Act.

65. Plaintiff purchased his GTX 970 new at retail in the State of California.

66. By placing its GTX 970 in the stream of commerce, Defendants impliedly warrants that their cards are fit for the use for which they were intended. A use NVIDIA described to all consumers as "high-performance graphics card designed for serious gaming."

67. Defendants' GTX 970 is unmerchantable and unfit for its intended use and ordinary use.

68. Defendants' GTX 970 was not reasonably fit for its intended use when it left Defendants' control and entered the market.

69. As a result, Plaintiff and Class Members have been damaged, and will continue to be damaged, in, among other things, the amount they paid to purchase Defendants' GTX 970.

70. Pursuant to California Civil Code § 1794, Plaintiff and Class Members are entitled to damages under the Song-Beverly Consumer Warranty Act.

## COUNT V

**Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et. seq*.**

71. Plaintiff incorporates all the above allegations by reference as if fully set forth herein.

72. Plaintiff asserts this Count individually and on behalf of the proposed Class.

73. Defendants' GTX 970 graphics cards are "consumer products" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(1).

74. Defendants are a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Act, 15 U.S.C. §§ 2301(4)-(5).

75. The GTX 970 was unmerchantable and were unfit for their intended use and the ordinary purposes for such graphics cards.

76. Plaintiff provided Defendants with notice to cure its breach of warranty.

77. As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered injury and damages in an amount to be determined at trial. Plaintiff and the Class are entitled to recover damages, consequential damages, specific performance, diminution in value, costs, attorney fees, rescission, and other relief as authorized by law.

## COUNT VI

**Consumers Legal Remedies Act, Civil Code §§ 1750 *et seq*.**

78. Plaintiff incorporates all the above allegations by reference as if fully set forth herein.

79. Plaintiff asserts this count individually and on the Class's behalf under California Civil Code § 1781.

80. The Consumers Legal Remedies Act ("CLRA") was enacted to protect consumers against unfair and deceptive business practices. The CLRA applies to Defendants' acts and practices because it covers transactions involving the sale of goods to consumers.

81. The GTX 970 graphics cards are "goods" under California Civil Code § 1761(a).

82. NVIDIA and ASUS are each a "person" under California Civil Code § 1761(c).

83. Plaintiff and Class Members are "consumers" under California Civil Code § 1761(d).

84. Plaintiff and Class Members engaged in "transactions" under California Civil Code § 1761(e), including the making of and performance of an agreement to purchase a GTX 970.

85. Defendants' unfair and deceptive business practices were intended and did result in the sale of the GTX 970.

86. Defendants engaged in unfair and deceptive practices by misrepresenting or failing to disclose the correct specifications of the GTX 970 to Plaintiff and Class Members. These acts are in violation of the following provisions of the CLRA:

    (a) in violation of Section 1770(a)(5), Defendants represented the GTX 970 has characteristics, uses and benefits that it does not have;

    (b) in violation of Section 1770(a)(7), Defendants represented the GTX 970 is of a particular standard, quality or grade when it is not;

    (c) in violation of Section 1770(a)(9), Defendants advertised the GTX 970 with the intent not to sell them as advertised;

    (d) in violation of Section 1770(a)(14), Defendants represented the transaction conferred or involved rights, remedies, or obligations that it did not have or involve; and

    (e) in violation of Section 1770(a)(16), Defendants represented the subject of the transaction has been supplied in accordance with a previous representation when it has not.

87. Defendants had a duty to disclose the correct specifications of the GTX 970 because:

    (a) Defendants had exclusive knowledge of material facts not known to Plaintiff or the Class Members;

    (b) Defendants actively concealed material facts from Plaintiff and the Class Members; and

    (c) Defendants made partial representations about the GTX 970 but also withheld material facts.

88. Defendants were under a duty to disclose the correct specifications of the GTX 970 and the impact of these corrected specifications to all consumers. Defendants failed to disclose these material facts to Plaintiff or Class Members. Defendants had exclusive knowledge of these material facts.

89. Defendants' failure to disclose the correct GTX 970 specifications is a material fact because had Plaintiff and the Class Members known the correct specifications of the GTX 970 they would not have purchased the cards. Plaintiff, Class Members, and other reasonable consumers would deem the difference in the specifications a material issue that would impact whether they would purchase the product or an alternative.

90. NVIDIA admitted it did not communicate the proper specifications for the GTX 970 to marketing and sales personnel.

91. At this time, Plaintiff does not seek to recover damages for himself or the Class under the CLRA. At this time, Plaintiff only seeks injunctive relief for violations of the CLRA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and Class Members pray for judgment against Defendants as follows, as is applicable for the appropriate causes of action set forth above:

A. declaring this action to be a proper class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and/or (b)(3);

B. awarding Plaintiff and Class Members all proper measures of damages;

C. awarding injunctive relief pursuant to the Consumer Legal Remedies Act, Civil Code §§ 1750 *et seq.*;

D.   awarding equitable relief including restitution and/or restitutionary disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts and practices;

E.   awarding Plaintiff reasonable costs, attorney's fees, and pre- and post-judgment interest; and

F.   granting such further and other relief this Court deems appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of all others similarly situated, demands a trial by jury on all issues so triable.

DATED: March 13, 2015                     Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　　　　*/s/ William J. Doyle II*
　　　　　　　　　　　　　　　　　　　　　　　William J. Doyle II

　　　　　　　　　　　　　　　　　　　　　　　DOYLE LOWTHER LLP
　　　　　　　　　　　　　　　　　　　　　　　William J. Doyle II
　　　　　　　　　　　　　　　　　　　　　　　John Lowther
　　　　　　　　　　　　　　　　　　　　　　　James R. Hail
　　　　　　　　　　　　　　　　　　　　　　　Christopher W. Cantrell
　　　　　　　　　　　　　　　　　　　　　　　10200 Willow Creek Road, Suite 150
　　　　　　　　　　　　　　　　　　　　　　　San Diego, CA 92131
　　　　　　　　　　　　　　　　　　　　　　　(858) 935-9960 phone
　　　　　　　　　　　　　　　　　　　　　　　(858) 939-1939 fax
　　　　　　　　　　　　　　　　　　　　　　　email:   bill@doylelowther.com
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　john@doylelowther.com
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　jim@doylelowther.com

　　　　　　　　　　　　　　　　　　　　　　　WESTERMAN LAW CORP.
　　　　　　　　　　　　　　　　　　　　　　　Jeff S. Westerman (SBN 94559)
　　　　　　　　　　　　　　　　　　　　　　　Anna Faircloth (SBN 275636)
　　　　　　　　　　　　　　　　　　　　　　　1900 Avenue of the Stars, 11th Floor
　　　　　　　　　　　　　　　　　　　　　　　Los Angeles, CA 90067
　　　　　　　　　　　　　　　　　　　　　　　(310) 698-7880 phone
　　　　　　　　　　　　　　　　　　　　　　　(310) 698-7452 fax
　　　　　　　　　　　　　　　　　　　　　　　email:  jwesterman@jswlegal.com
　　　　　　　　　　　　　　　　　　　　　　　　　　　　afaircloth@jswlegal.com

　　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff and the proposed class*